IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ANDREA STEPHENS

    Plaintiff,

v.

COMCAST CORPORATION

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Andrea Stephens, through her attorneys, KING & GREISEN, LLP, hereby brings this Complaint against Defendant Comcast Corporation ("Comcast").

**INTRODUCTION**

In five years at Comcast, Andrea Stephens had seven managers and zero problems, until she was assigned to Kevin Foran's department. Foran believed that women should (1) be perky, deferential, and compliant, (2) not aspire to senior management, or (3) not be included in career advancing opportunities. Consistently with that view, Foran reprimanded female subordinates, Ms. Stephens included, who expressed any negative views or questioned his authority. In contrast, he permitted men to question him, think critically, and express negative emotions. The only female subordinates who did well with Foran were the younger employees who were more deferential to him than the more mature and experienced Ms. Stephens.

1

The situation began unraveling when Ms. Stephens expressed dismay to a colleague (not Foran) regarding Comcast's all-male golf outing for managers, to which she was not invited. When word got back to Foran, he again reprimanded Ms. Stephens for "insubordination" verbally and in writing, then cited the incident in Ms. Stephens's second quarter performance evaluation.

Having reached her limit with Foran's discriminatory management style, Ms. Stephens filed a gender discrimination complaint internally with Comcast Listens in July of 2018. The complaint listed numerous instances of Foran's sex discrimination. At the end of August of 2018, Comcast Listens concluded that Mr. Foran treated Ms. Stephens "poorly" but found no gender discrimination. Comcast also refused to assist Ms. Stephens with a transfer to a different department. Ms. Stephens's complaint was the last straw for Foran: about a month later, he terminated Ms. Stephens shortly after she returned from FMLA-protected medical leave. Although Foran told Ms. Stephens that her position was "eliminated," this was untrue. In reality, Foran had offered an identical leadership position to another employee while Ms. Stephens was on leave; Ms. Stephens was qualified for and could have easily assumed that position. Thus, Ms. Stephens's termination was nothing but retaliation for exercising her federally-protected right: opposing gender discrimination at work.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and 29 U.S. Code § 621, et seq.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §

2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado.

3. All procedural prerequisites for filing this lawsuit have been met. Plaintiff timely filed a Charge of Discrimination alleging gender and age discrimination and retaliation against Comcast with the Equal Employment Opportunity Commission ("EEOC") and subsequently received a Notice of Right to Sue letter. This Complaint and Jury Demand is being filed within ninety (90) days of receiving the Notice of the Right to Sue from the EEOC. Therefore, under 42 U.S.C. § 2000e-5(f)(l) and 29 U.S. Code § 626(d), Plaintiff has satisfied all procedural prerequisites for suing in federal court.

4. This action is authorized by and instituted pursuant to

- Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1); and
- Age Discrimination in Employment Act ("ADEA"), 29 U.S. Code § 621, et. seq.

5. All procedural prerequisites for the filing of this suit have been met. Ms. Stephens timely filed Charges of Discrimination alleging sex and age discrimination and retaliation for engaging in protected activity in opposition to discrimination against Defendant.

6. Ms. Stephens received a Notice of Right to Sue from the EEOC on May 4, 2021 and has filed this Complaint within 90 days of receiving such notice.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of (1) Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h), and (2) ADEA, 29 U.S. Code § 630(b).

## PARTIES

8. Plaintiff Andrea Stephens is a woman who currently is, and at all times relevant to

3

this action has been, a citizen of the United States of America and resident of the State of Colorado.

9. At all times during the events giving rise to this action, Ms. Stephens was an employee employed by Comcast.

10. Defendant Comcast is a Pennsylvania corporation with principal offices located in Philadelphia, Pennsylvania.

11. At all times relevant to this action, Defendant Comcast has been an employer within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S. Code § 630(b).

12. Defendant Comcast maintains offices in Denver, Colorado.

## FACTUAL ALLEGATIONS

**I.   Ms. Stephens Begins Her Employment at Comcast and Excels in Her Performance.**

13. Ms. Stephens began her employment at Comcast in February of 2012 as Specialist 3 with Product Sales, Support and Analysis. Ms. Stephens had a proven managerial track record at prior employers.

14. Ms. Stephens was 53 years old at the start of her Comcast employment.

15. Ms. Stephens began supervising other employees within one year after beginning her employment at Comcast. Ms. Stephens performed managerial duties without a corresponding title or pay for a year until her official promotion.

16. Ms. Stephens was promoted in 2014 with a "Manager 1" title.

17. Ms. Stephens experienced high turnover in her managers: in five years of her Comcast employment, Ms. Stephens reported to seven different managers.

18. With all managers except for Kevin Foran (the last manager in Ms. Stephens's Comcast tenure), Ms. Stephens experienced no performance or relational issues.

19. All of Ms. Stephens's performance reviews at Comcast were positive.

## II. Ms. Stephens Begins Working Under Foran Who Demands Positivity and Deference from Female but Not Male Subordinates.

20. In mid-2017, Comcast placed Ms. Stephen under Foran's management.

21. Ms. Stephens was surprised to find that Foran often coached his female reports to behave submissively, especially when communicating with him. Foran also insisted that women had to be unquestioningly deferential to their chain of command (i.e., Foran himself). Foran considered women who questioned or challenged management to be bad employees.

22. Foran also made clear that, in order to be a good leader, a woman had to be perky; Foran referred to this as "maintaining a positive attitude," but made clear that he wanted unrelenting positivity. Foran reprimanded women who had a "bad attitude."

23. Throughout the first year of reporting to Foran, Foran regularly coached Ms. Stephens on "positivity." Foran often portrayed Ms. Stephens's actions as negative or counter to Comcast "culture."

24. Foran "coached" Ms. Stephens about her subordinates' "disrespectful" language after they expressed frustration with a product they were tasked to support.

25. Foran trained and judged Ms. Stephens differently from her male peers.

26. Foran allowed male employees to question his goals and plans. Upon information and belief, Foran never reprimanded a man for having a "bad attitude."

27. Foran organized outings, such as management team events, that only included male managers. In other words, Foran excluded female managers from outings or management team events.

### III. Foran Prefers to Work with Younger Female Subordinates.

28. Foran worked better with younger female managers who acted more deferentially toward him. During Ms. Stephens's employment, Foran's two other female direct reports were in their 20s and 30s.

29. Foran invited those younger female managers to a weekly "manager lunch" but never invited Ms. Stephens.

30. Foran invited younger female employees to after-work social outings.

31. Foran never invited Ms. Stephens to after-work social outings.

### IV. Ms. Stephens is Excluded from Participating in Career-Advancing Events.

32. In May 2018, Ms. Stephens requested approval to attend a customer event in Las Vegas.

33. Ms. Stephens had attended the same event for three (3) prior years under different managers.

34. The entire event (including airfare and hotel) would cost approximately $350.00; however, Foran denied her request.

35. Approximately one (1) week after Ms. Stephens was denied permission to attend the Las Vegas event, Bill Conway, Ms. Stephens's Manager 1 peer told Ms. Stephens about a team building golf outing ("Top Golf event") for Comcast managers.

36.     Ms. Stephens was not invited to this event. Conway confirmed that no other female managers had been invited to the event.

37.     In response, Ms. Stephens joked with Conway that maybe the men were afraid to play golf with women.

**V.     Foran Retaliates Against Ms. Stephens for Her Comment about the Golf Outing.**

38.     Foran was not present for the conversation between Ms. Stephens and Conway regarding the Top Golf event.

39.     However, Foran later learned about the conversation between Ms. Stephens and Conway.

40.     Within a week of the conversation, on May 29, 2018, Foran presented Ms. Stephens with an official "corrective action."

41.     The "corrective action" referenced some coaching from the previous year, but the *only* 2018 item Foran mentioned was:

> 5/29/2018 – Inappropriate behavior/reaction in front of front-line staff regarding Bill Calton's team building event at Top Golf on 5/23. **Expressed frustration and resentment that women weren't invited**, but the event was intended for Calton's Sr. Leaders, none of which are women. Of note, Nilda Sawchuck, Bill's Exec Assistant was invited.
> (Emphasis added).

42.     Conway – the person who told Ms. Stephens about Top Golf event and was invited to the event – had the title of Manager 1 and was Ms. Stephens's peer.

### VI. Ms. Stephens Files an Internal Discrimination Complaint.

43. On July 11, 2018, Ms. Stephens filed a formal gender discrimination complaint with Comcast Listens.

44. In her complaint, Ms. Stephens requested a transfer to a different department.

45. The complaint detailed multiple instances of Foran's "coaching" of Ms. Stephens and other discriminatory treatment, including the May 29, 2018, retaliatory corrective action. A representative from Comcast Listens told Ms. Stephens that Comcast would investigate her gender discrimination complaint.

46. On August 24, 2018, an HR representative notified Ms. Stephens that it was closing her case because there was not enough evidence to substantiate her claim. The representative said that while HR did not find sex discrimination, Foran handled the situation *"poorly"* and this was a *"coaching opportunity"* for him.

47. The representative added that Ms. Stephens was free to transfer within Comcast, but HR would not assist her.

### VII. Foran Terminates Ms. Stephens in Retaliation for Filing a Discrimination Complaint.

48. Ms. Stephens took time off from September 10-14, 2018, to care for a sick relative. This leave was protected by the Family Medical Leave Act ("FMLA")

49. While Ms. Stephens was on leave, her direct report Viviana Madrenero-Rivero gave Foran her resignation. Foran attempted to dissuade Madrenero-Rivero from resigning by offering to promote her into a leadership position.

50. Two days later, when she returned from leave, Foran terminated Ms. Stephens.

51. Foran claimed that Ms. Stephens's position had been eliminated.

52. Ms. Stephens was qualified for the leadership role Foran offered to Madrenero-Rivero just days before terminating Ms. Stephens.

53. Ms. Stephens's termination occurred just over three (3) months after she protested gender discrimination in the Top Golf team building event and just two (2) months after Ms. Stephens filed an official gender discrimination complaint with Comcast.

### VIII. Comcast Continues Retaliating Against Ms. Stephens by Failing to Rehire Her for Positions for which She Was Qualified.

54. Since her termination from Comcast, Ms. Stephens has applied for numerous open positions with Comcast for which she is qualified, including the following:

- Manager, Marketing Strategic Initiatives & Promotions
- Partner Account Coordinator
- Comcast Business Inbound Retention Supervisor
- Senior Mnager, Business Partner Operations
- Supervisor, Indirect Channel Partner Support
- Sports Planner
- Comcast Business Outbound Sales Representative-Centennial, CO
- Associate Business Executive
- Customer Experience Manager

55. Ms. Stephens was notified within 24 hours after applying online that she was not being considered for the positions.

56. The only position Comcast contacted Ms. Stephens about was an *entry-level sales position* that involved cold-calling potential customers. It required a significant reduction in pay for which she was required to sign an arbitration agreement.

### FIRST CLAIM FOR RELIEF:
### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

57. Plaintiff realleges and incorporates by reference all allegations in every preceding and subsequent paragraph as if fully set forth herein.

58. As a woman, Plaintiff is a member of a group protected from sex discrimination by Title VII.

59. Ms. Stephens was subjected to discrimination by Foran, her direct supervisor, who repeatedly treated her differently from her similarly situated male colleagues by

- Interpreting her expressing concerns about the business as inappropriate negativity;
- Expecting unquestioning deference to his judgment;
- Excluding her from management team events;
- Excluding her from a customer event in Las Vegas; and
- Reprimanding her after she expressed dismay for being excluded from the golfing event.

60. Defendant, through its Human Resources Department, further discriminated against Ms. Stephens by concluding, through the Comcast Listens investigation, that Foran's treatment of Ms. Stephens was not discriminatory.

61. Defendant, through its Human Resources Department, further discriminated against Ms. Stephens by refusing to help her transfer to a different department.

62. Ms. Stephens was further subjected to sex discrimination when Defendant failed to rehire her for the positions for which she was qualified after her termination.

63. Defendant subjected Ms. Stephens to such disparate treatment because of her sex.

64. The effect of Defendant's practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her employment status because of her sex and because of her complaints of discrimination.

65. These unlawful employment practices were intentional.

66. Defendant engaged in the unlawful employment practices with malice or with reckless indifference to Plaintiff's protected civil rights.

## SECOND CLAIM FOR RELIEF:
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

67. Plaintiff realleges and incorporates by reference all allegations in every preceding and subsequent paragraph as if fully set forth herein.

68. Ms. Stephens was subjected to age discrimination by Defendant when Foran, her direct supervisor, treated her differently from her younger colleagues in the following ways:

- Excluding her from after-work social activities to which younger employees were invited;
- Excluding her from management team events;
- Excluding her from a customer event in Las Vegas; and
- Excluding her from Top Golf event.

69.     Ms. Stephens was further subjected to age discrimination when Defendant failed to rehire her for the positions for which she was qualified after her termination.

70.     Defendant subjected Ms. Stephens to such disparate treatment because of her age.

71.     The effect of Defendant's practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her employment status because of her age.

72.     These unlawful employment practices were intentional.

73.     Defendant engaged in the unlawful employment practices with malice or with reckless indifference to Plaintiff's protected civil rights.

### THIRD CLAIM FOR RELIEF:
### RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY UNDER TITLE VII

74.     Plaintiff realleges and incorporates by reference all allegations in every preceding and subsequent paragraph as if fully set forth herein.

75.     Plaintiff engaged in protected activity under Title VII by verbally and in writing complaining about the gender-based discrimination, gender-based unequal treatment, and gender-based exclusion from career advancing events.

76.     Plaintiff engaged in protected activity under Title VII by filing a gender discrimination complaint with Comcast Listens.

77.     In doing so, Plaintiff opposed discrimination on the basis of her sex, a practice made unlawful by Title VII.

78.     Defendant knew that Plaintiff had engaged in protected activity under Title VII by complaining that she was subjected to sex discrimination and unlawful retaliation.

79. Defendant retaliated against Ms. Stephens when Foran

- Reprimanded her when she did not conform to the gender norms by expressing negative emotions;
- Reprimanded her for expressing dismay at being excluded from Top Golf event;
- Included the reprimand in Ms. Stephens's performance evaluation; and
- Terminated Ms. Stephens under a pretext of eliminating her position.

80. Defendant further retaliated Ms. Stephens by failing to rehire her post-termination for the positions for which she was qualified.

81. A reasonable employee would find unequal treatment, exclusion from career building events, termination of employment, and failure to rehire to be materially adverse employment actions.

82. The effect of Defendant's practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her employment status because of her sex and age because of her complaints of discrimination and retaliation.

83. These unlawful employment practices were intentional.

84. Defendant engaged in the unlawful employment practices with malice or with reckless indifference to Plaintiff's protected civil rights.

## **Relief Requested**

WHEREFORE, Plaintiff respectfully requests:

1. That this Court assume jurisdiction;

2. That this Court enter judgment in Plaintiff's favor and against Defendant;

3. That this Court declare the actions of Defendant described in this Complaint to be in violation of Title VII, as amended, and the ADEA;

4. That this Court award Plaintiff all appropriate relief at law and equity, including but not limited to back pay with pre-judgment interest, front pay, a gross-up adjustment for taxes and any subrogation interests and all other make whole relief, including all available consequential/compensatory damages;

5. That this Court grant compensatory and consequential damages against Defendant, including but not limited to damages for emotional distress, humiliation, loss of income and enjoyment of life, and other pain and suffering on all claims by law in the amount to be determined at trial against the Defendant, as allowed by law;

6. That this Court grant exemplary and/or punitive damages as allowed by law;

7. That this Court award attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law;

8. That this Court award pre-judgment and post-judgment interest at the highest lawful rate; and

9. That this Court award such additional or alternative relief as may be just, proper, and equitable.

PLAINTIFF REQUESTS A JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted this August 2, 2021, by:

        KING & GREISEN, LLP

        /s/ *Diane S. King*
        Diane S. King
        KING & GREISEN, LLP
        1670 York Street
        Denver, CO 80206
        (303) 298-9878 (voice)
        (303) 298-9879 (fax)
        king@kinggreisen.com

        *Attorneys for Plaintiff*

Plaintiff's Address:

Andrea Stephens
2800 W. Centennial Drive #H
Littleton, CO 80123